1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  NICOLA CHRISTOPHER BUCCI,              No.  2:  11-cv-3147 GEB KJN P

12              Petitioner,

13       v.                                FINDINGS & RECOMMENDATIONS

14  TIMOTHY E. BUSBY,

15              Respondent.

16

17  Introduction

18       Petitioner is a state prisoner, proceeding through counsel, with a petition for writ of

19  habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2009 conviction for two

20  counts of second degree murder.  He is serving a sentence of 23 years to life.

21       Pending before the court is respondent's motion to dismiss.  Respondent argues that

22  claims 3, 4, 5, 6, 7 and 8 are not exhausted, procedurally defaulted and/or barred by the statute of

23  limitations.  In the reply to petitioner's opposition, respondent withdraws the motion to dismiss

24  regarding claim 4.

25       After carefully reviewing the record, the undersigned recommends that respondent's

26  motion be granted as to claims 3, 5, 6 and 8 on the grounds that these claims are procedurally

27  defaulted and barred by the statute of limitations.

28  ////

1

Factual Background

The undersigned sets forth the factual background of petitioner's case as it puts respondent's motion in context.

A. Prosecution Case

1. Eye witnesses Johnson and Fender

Witness Kim Johnson testified that around 6:30 p.m. on November 17, 2006, she was driving eastbound on Highway 12, a two lane highway. Traffic was heavy in both the eastbound and westbound lanes. Johnson was driving at the 55 mile per hour speed limit. She looked in her rear view mirror and saw a silver SUV pass her vehicle in the westbound lane, then pull in front of her vehicle in the eastbound lane. The silver SUV was "driving really fast." Johnson estimated its speed at 65 to 70 miles per hour.

Passing was prohibited in this section of Highway 12. Nevertheless, the silver SUV pulled back into the westbound lane and accelerated up a hill, attempting to pass more vehicles. At the crest of the hill, the SUV collided head on with a small red car in the westbound lane. The SUV flipped in the air and landed in a field. The small car was severely damaged and burning in the westbound lane.

Johnson pulled over and ran to the small red car. The driver was screaming, and Johnson said she would get her out of the vehicle. A man (whom Johnson identified at trial as Bucci) also approached the small vehicle, and Johnson asked him "to go check the SUV to see if anybody was in the SUV was okay [ sic ]." Bucci responded, "It was me, I was driving." Johnson asked Bucci to help her extract the driver from the burning vehicle. Bucci threw up his hands and said, "Oh, my God. What I have done [ sic ]?" When Johnson again asked Bucci to help her, Bucci responded, "I can't," and walked away. Another person at the scene (Jerry Fender) helped Johnson remove the driver from the burning red car.

Jerry Fender testified that he was driving eastbound on Highway 12 around 6:30 p.m. on November 17, 2006. He confirmed that Highway 12 is a two lane highway with one eastbound lane and one westbound lane, with a speed limit of 55 miles per hour. Fender was travelling about 50 miles per hour behind two "semi-tractor trail[e]rs." An SUV passed his vehicle at about 70-80 miles per hour, even though there was a solid yellow line on the east bound lane indicating no passing. FN2 The SUV did not veer or move erratically, but proceeded in a "straight ahead, aggressive passing maneuver like you would normally do on a flat stretch of road." The SUV accelerated eastbound in the westbound lane, passing one of the semi-trailers and attempting to pass the second. When the SUV reached the crest of a hill, it collided head on with a red Toyota.

FN2. On the night of the accident, Fender told the police he believed that Bucci's vehicle was traveling 65 to 70 miles per hour.

By either account, it was at least 10 miles per hour over the posted speed limit.

After passing the collision, Fender made a U turn, stopped his vehicle, and turned on his hazard lights to prevent other vehicles from colliding with the wrecked Toyota, which had come to a stop in the westbound lane. The SUV ended up in a field. When Fender saw that the Toyota was on fire, he retrieved a fire extinguisher from his vehicle and approached the Toyota, where he saw a woman and three young children inside.

2. Victim Jackson

Victim Regina Jackson testified that, around 6:30 p.m. on November 17, 2006, she was returning home to Fairfield from Rio Vista in her red Toyota Corolla. In the car with her were three passengers: her children Jordan and Immanuel; and Demari H., the child of a friend.

As Jackson drove westbound on Highway 12, she suddenly saw a "car coming head-on into us passing two diesel trucks -- trying to pass two diesel trucks coming over a hill." Jackson testified, "I tried to go over to the right, but I couldn't. There was nowhere I could go." There was a head on collision just as she crested the hill.

As a result of the collision, Jackson suffered debilitating injuries, including a broken femur, knee, hip, and foot, with additional injuries to her forehead, eye, and mouth. She remained in the hospital for over two months. Imannuel and Demari H. died as the result of the injuries they suffered in the accident; Jordan became paralyzed from the waist down.

3. Investigation

Jason Bryant, an emergency medical technician, responded to the scene. Bryant contacted Bucci and found him to be uninjured except for pain in his elbow and back. Bucci stated he was the driver of one of the vehicles in the collision. He told Bryant that he believed he "fell asleep at the wheel."  Bucci appeared emotionally upset and in tears, but was "cogent and responsive" to questions and gave "logical, reasonable answers."

California Highway Patrol Officer Patricia Rodriguez conducted an accident investigation at the scene. She confirmed there was a solid yellow line indicating a no passing zone for eastbound traffic going up the hill where the collision occurred. She concluded that the red Toyota was going westbound and was struck head on by the SUV that was travelling eastbound in the westbound lane.

California Highway Patrol Officer Michael Ervin also responded to the scene. Ervin contacted Bucci, who was cogent and lucid and admitted he was the owner and driver of the SUV. According to the officer's report, Bucci told the officer: He "momentarily fell asleep, dozed off, realized he was traveling in the wrong lane. Tried to speed up to pass a truck that was alongside of him. Saw the victim

3

vehicle coming towards him. And swerved to the left, and the impact took place."

Officer Ervin asked Bucci if he had any health problems that might have contributed to the accident. Bucci replied that he had sleep apnea, but he denied being tired at the time of the accident. He did not claim to have been exposed to any substance that could cause him to lose consciousness.

Based upon witness interviews and investigation of the scene, Officer Ervin concluded that Bucci had violated the Vehicle Code by crossing over a solid yellow roadway line that prohibited passing and by attempting to pass while going up a hill. In short, Ervin asserted, Bucci was "attempting to pass a passenger vehicle and two semi trucks uphill going the wrong way." The officer acknowledged that it was highly dangerous to drive well in excess of the posted speed limit in order to pass multiple vehicles approaching the crest of the hill.

It was stipulated that testing found no drugs or alcohol in Bucci's system. There were no skid marks on the road indicating that Bucci tried to apply his brakes before the collision.

4. Bucci's Prior Fatal Collision in 1994

The prosecutor introduced evidence that Bucci was involved in a head on collision on Highway 80 in January 1994. Travelling westbound, Bucci's pickup truck proceeded on the right shoulder for over one thousand feet, then veered across the two westbound lanes and the dirt center median before colliding head on with a Cadillac sedan in the eastbound lane. The occupants of the Cadillac died as a result of the collision. At the scene, Bucci told California Highway Patrol Officer Ty Brown that he had been up all night gambling at casinos in Reno. He also admitted drinking alcohol and smoking marijuana. Bucci stated that he apparently fell asleep or blacked out while driving and awoke just before the collision. Officer Brown concluded that the circumstances of the accident were consistent with Bucci's claim.

B. Defense Case

1. Bucci

As to the 1994 traffic accident, Bucci explained that he had been awake for over 30 hours and fell asleep at the wheel; when he woke up, his car was out of control and he collided with another car.

As to the charged crimes, Bucci testified that on Friday, November 17, 2006, he was working as a sous chef at Google's main headquarters in Mountain View. Over the weekend Google was going to conduct tests related to transferring from electrical power to solar power, and during those tests, the electrical energy would be shut off. Therefore, 150 pounds of dry ice had been placed in a 10 foot by 20 foot walk in freezer. Bucci was not warned of any hazards of exposure to dry ice.

4

On November 17, Bucci inspected the food inventory of the walk in freezer containing the dry ice. After 10 15 minutes inside the freezer, he became dizzy and short of breath. He left the freezer and, when he went back in to complete his work, experienced the same thing. He testified, "I really don't remember a lot of stuff after that second time." He had never experienced any adverse effects after being in the walk in freezer before.FN3

FN3. Other Google employees confirmed at trial that dry ice was placed in the refrigerators and freezers and no safety instructions or information concerning the proper handling of dry ice were given to Bucci. One employee testified that Bucci had appeared healthy and normal at work, but later in the day he appeared drawn, pale, and ill. Bucci told him that while in one of the walk in freezers, he experienced dizziness that caused him to fall on a rack and hurt his arm. He also complained of a severe headache.

Around 3:00 p.m., Bucci left work and began driving from Mountain View to Lodi. He testified that he could recall only "bits and pieces" of the evening. He did not know how he found his vehicle in the parking lot. He did not know how he got to Highway 12, which was not his intended route. He denied any recollection of driving up an incline or trying to pass a truck. He remembered "a Jack in the Box and, uh, a tractor trailer [to the right of him] and then, uh, lights, and I, uh I had swerved, I swerved to the left and I saw the lights." Then the collision occurred. The next thing he remembered was being in an ambulance.

On cross examination, Bucci acknowledged that he learned from the 1994 incident that you can likely kill someone if you fall asleep at the wheel. Bucci denied any recollection of telling EMT Bryant, at the scene of the 2006 accident, that he fell asleep at the wheel. Bucci also acknowledged knowing, as of November 2006, that passing on a two lane highway could be dangerous, and passing in the wrong lane on a two lane highway can be extremely dangerous to oncoming traffic. He was also aware that "passing uphill over a solid no pass line towards the crest of a hill where you can't see is life endangering," and "passing multiple vehicles at night uphill in excess of a speed limit over the solid line is likely to kill somebody." Bucci asserted that he would never pass uphill in a no passing zone and could not remember it happening.

2. Expert Witnesses

Bucci presented medical experts who testified that exposure to large amounts of carbon dioxide can result in hypoxia, or oxygen deprivation to the brain. Hypoxia can cause mental impairment and loss of cognitive function. Specific symptoms could include loss of memory and difficulties in attention and concentration. It might affect a person's ability to perform complex tasks such as driving an automobile at night and passing other motor vehicles.

Neuropsychologist Darcy Cox opined that Bucci's actions after being exposed to dry ice were consistent with his having a severe hypoxic episode: his lack of memory, changes in vision, feeling

5

tired, feeling dizzy and confused, and driving out of his way. Dr. Cox also opined that Bucci was clinically depressed and was suffering from post traumatic stress disorder based on his involvement in the previous fatal accident in 1994. Because of this disorder, she reasoned, Bucci must have assumed that the second accident in 2006 was caused because he fell asleep at the wheel again, and this may have been the reason he stated at the scene of the 2006 accident that he believed he fell asleep.

People v. Bucci, 2010 WL 2512732 at *1-5 (2010).

Procedural Background

Petitioner was convicted on February 9, 2009.  (ECF No. 1 at 1.)  Petitioner appealed to the California Court of Appeal raising the following issues:  1) the trial court erred in admitting prior bad act evidence in violation of petitioner's federal constitutional rights; 2) insufficient evidence to sustain the murder convictions in violation of petitioner's constitutional rights; 3) jury instruction error (2 claims); 3) the trial court erred in excluding evidence that petitioner had been convicted and punished for prior bad acts; 4) prosecutorial misconduct; and 5) improper application of enhancements.  (Id. at 2.)  On June 23, 2010, the California Court of Appeal upheld petitioner's conviction.  (Id.)

On September 1, 2010, the California Supreme Court denied petitioner's petition for review.  (Id. at 2.)  The petition for review raised the following claims:  1) improper application of enhancements; 2) the trial court erred in admitting prior bad act evidence in violation of petitioner's constitutional rights; 3) implied malice second degree murder in vehicular homicides should not apply to non-driving under the influence cases; and 4) prosecutorial misconduct.  (Id. at 3.)

On November 23, 2010, petitioner filed a habeas corpus petition in the Solano County Superior Court.  (Id. at 3.)  This petition alleged that the trial court erred in excluding receipts/invoices showing that dry ice was delivered to petitioner's place of employment on the day in question.  (Id.)  On January 21, 2011, the Superior Court denied the petition.  (Id.)

On March 14, 2011, petitioner filed a habeas corpus petition in the California Court of Appeal raising two claims:  1) the trial court erred in excluding receipts/invoices showing that dry ice was delivered to petitioner's place of employment on the day in question; and 2) appellate

6

1  counsel was ineffective for failing to raise this question on appeal.  (Id. at 4.)  On March 24,

2  2011, the California Court of Appeal denied this petition without prejudice to petitioner raising

3  ground two in a petition filed in the Superior Court.  (Id. at 4.)

4        On April 29, 2011, petitioner filed a second petition in the Superior Court raising the same

5  two claims raised in the petition filed in the California Court of Appeal on March 14, 2011.  (Id.)

6  On June 20, 2011, the Superior Court denied this petition.   (Id. at 4.)

7        In late September 2011, petitioner's family retained petitioner's present counsel.  (ECF

8  No. 10-5 at 2.)

9        On November 28, 2011, petitioner filed his original petition in this court.  (ECF No. 1.)

10  This petition raised the following claims:  1) admission of irrelevant evidence (claim one); 2)

11  prosecutorial misconduct (claims two and seven); 3) improper exclusion of evidence (claim

12  three); 4) ineffective assistance of counsel (claims four, five and six); and 4) cumulative error

13  (claim eight).  (Id. at 5-18.)

14        On January 9, 2012, petitioner filed a motion to stay his federal petition pending

15  exhaustion of state court remedies.  (ECF No. 10.)

16        On March 13, 2012, the undersigned issued findings and recommendations recommending

17  that petitioner's motion to stay this action pending exhaustion of unexhausted claims be granted.

18  (ECF No. 17.)  The undersigned found that petitioner's claims 3, 4, 5, 6, 7 and 8 were not

19  exhausted.  (Id. at 10-13.)  The undersigned recommended that petitioner's motion to stay claim

20  4,  pursuant to Rhines v. Weber, 544 U.S. 269 (2005), be granted.  (Id. at 17.)  The undersigned

21  found that the remaining unexhausted claims did not qualify for a stay pursuant to Rhines, but

22  recommended that petitioner be permitted to exhaust them in state court pursuant to the

23  procedures set forth in Kelly v. Small, 315 F.3d 1063, 1070-71 (9th Cir. 2003).[1]  (Id.)  The

24   

---

25  [1] "Pursuant to the Kelly procedure, (1) a petitioner amends his petition to delete any unexhausted
claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing

26  the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the
petitioner later amends his petition and re-attaches the newly exhausted claims to the original

27  petition."  King v. Ryan, 564 F.3d 1133, 1135 (2009) (citing Kelly, 315 F.3d at 1070-71.)  Kelly
requires the petitioner to delete unexhausted claims such that only exhausted claims are stayed.

28  See King, 564 F.3d at 1135 (outlining the Kelly procedure).

1    undersigned recommended that the claims stayed pursuant to <u>Kelly</u> be stricken.  (<u>Id.</u>)

2           On April 30, 2012, the Honorable Garland E. Burrell adopted the March 31, 2012 findings

3    and recommendations.  (ECF No. 18.)

4           Petitioner filed a habeas corpus petition in Superior Court on January 11, 2012.  (ECF No.

5    19-8 at 2 (petitioner's exhibit 4, TAB B.)  This petition raised at-issue claims 3, 5, 6, 7 and 8 as

6    well as other claims.  (<u>Id.</u>)  On March 6, 2012, citing <u>In re Clark</u>, 5 Cal.4th  750, 774-75, 783

7    (1993), the Superior Court denied claims 3, 5, 6, 7 and 8 on grounds that they were "successive,

8    delayed or piecemeal," and thus, an abuse of the writ.  (ECF No. 19-7 at 5 (petitioner's exhibit 4,

9    TAB A.))

10          On May 3, 2012, petitioner filed a habeas corpus petition in the California Court of

11   Appeal.  (ECF No. 27 at 28.)  On August 8, 2012, the California Court of Appeal issued a

12   peremptory writ directing the Solano County Superior Court to vacate its March 6, 2012 denial of

13   the habeas petition, and to reassign the petition to another judge.  (<u>Id.</u> at 30.)  The California

14   Court of Appeal found that the Superior Court judge who considered the petition filed January 11,

15   2012 was disqualified from considering the petition.  (<u>Id.</u> at 29.)

16          On October 11, 2012, the Solano County Superior Court again denied the petition.  (ECF

17   No. 19-9 at 2 (petitioner's exhibit 4, tab C).)  The Superior Court again found claims 3, 5, 6, 7

18   and 8 to be successive and or untimely, citing <u>In re Clark</u>, <u>supra</u>.  (<u>Id.</u>)

19          On December 11, 2012, petitioner filed a habeas corpus petition in the California Court of

20   Appeal.  (ECF No. 19-6 (petitioner's exhibit 4).)  This petition raised claims 3, 5, 6, 7 and 8 as

21   well as other claims.  (<u>Id.</u>)  This petition identified claim 3 as claim "E," claim 5 as claim "C(2),"

22   claim 6 as claim "C(1)," claim 7 as claim "F," and claim 8 as claim "H."  (<u>Id.</u>)  On June 18, 2013,

23   _____

24          In step three of the <u>Kelly</u> procedure, a petitioner is allowed to add his newly exhausted
     claims back into the federal petition if the claims are independently timely under the statute of
     limitations or "relate back" to the exhausted claims in the pending petition.  <u>See King</u>, 564 at
25   1140-41.  "An amended habeas petition does not relate back (and thereby escapes AEDPA's one
     year time limit) when it asserts a new ground for relief supported by facts that differ in both time
26   and type from those the original pleading set forth."  <u>Mayle v. Felix</u>, 545 U.S. 644, 650 (2005).  A
     new claim "relates back" to an existing claim if the two claims share a "common core of
27   operative facts."  <u>Id.</u> at 569.  A new claim does not "relate back" to an existing claim simply
     because it arises from "the same trial conviction or sentence."  <u>Id.</u> at 663-64.

28

the California Court of Appeal denied the petition.  (ECF No. 19-5 (petitioner's exhibit 3).)  This

order stated,

> The petition for writ of habeas corpus is denied.
>
> The petition lacks sufficient allegations to meet the petitioner's burden of demonstrating that the petition should not be barred as untimely or successive, as to Claims C, D, E, F, G and H (to the extent claim H is not based on Claims A and B).   (In re Clark (1993) 5 Cal.4th 750, 774-775, 782-799; In re Robbins (1998) 18 Cal.4th 770, 780-781; In re Swain (1949) 34 Cal.2d 300, 303-304; see also In re Reno (2012) 55 Ca.4th 428, 472-474.)  Additionally, Claims E, F and G are barred by In re Dixon (1953 41 Cal.2d 756, 759, and Claims E and G are barred by In re Waltreus (1965) 62 Cal.2d 218, 225.
>
> Even assuming, arguendo, that Claims A and B should not be barred as untimely or successive, these claims, and the portion of Claim H that relies on Claims A and B, are denied, for failure to state a prima facie case for relief.

(Id.)

On July 1, 2013, petitioner filed a petition for review in the California Supreme Court.

(ECF No. 19-4 (petitioner's exhibit 2).)  On August 13, 2013, the California Supreme Court

denied the petition for review without comment or citation.  (ECF No. 19-3 (petitioner's exhibit

1).)

On January 23, 2014, petitioner filed a motion to lift the stay in this court and an amended

petition.  (ECF No. 19.)  The amended petition raises the same claims as were raised in the

original petition.  (ECF No. 19-2 at 7-12.)  The undersigned summarizes these claims herein.

Claim 1 alleges that petitioner's right to due process was violated when the trial court

admitted irrelevant evidence that was so prejudicial that it rendered the trial fundamentally unfair,

i.e., evidence that in 1994, petitioner had fallen asleep at the wheel, abruptly awoke when his

vehicle ran off the road, overcorrected and crossed the center line, hitting another vehicle head-on

and killing the 2 occupants.  (Id. at 7.)  Claim 2 alleges that the prosecutor committed misconduct

during closing argument with his comments regarding the 1994 accident, i.e., he improperly

argued that in 1994, petitioner "got away with it."  (Id. at 8-9.)  Claim 3 alleges that the trial court

erred in excluding evidence that petitioner had been convicted of and punished for the 1994

accident, i.e., he had not "gotten away with it," in violation of his Fifth and Sixth Amendment

1  rights to present a defense, the Sixth Amendment right to confront and cross-examine, and the

2  Due Process Clause of the Fourteenth Amendment.  (Id. at 9.)  Claim 4 alleges that trial counsel

3  was ineffective for failing to adequately investigate the facts and circumstances of the 2006

4  incident, i.e., he failed to hire an accident reconstruction expert.  (Id. at 9-10.)

5       Claim 5 alleges that trial counsel was ineffective for failing to object to the prosecutor's

6  arguments that petitioner had "gotten away with it" before, that the prosecutor himself had never

7  been in someone else's lane for 2 to 25 seconds (like petitioner testified to), and that the defense

8  experts were "bought." (Id. at 10.)  Claim 6 alleges that trial counsel was ineffective for failing to

9  introduce evidence that petitioner had been convicted of the 1994 homicide.  (Id. at 11.)   Claim 7

10  alleges that the prosecutor committed misconduct by urging the jury to consider the 1994 accident

11  for purposes other than that instructed by the trial court.  (Id. at 11.)  Claim 8 alleges cumulative

12  error.  (Id.  at 12.)

13       On February 20, 2014, the undersigned granted the motion to lift the stay and directed

14  respondent to file a response to the petition.  (ECF No. 25.)  On May 5, 2014, respondent filed the

15  pending motion to dismiss.  (ECF No. 27.)

16  Claim 7

17       In his opposition, petitioner argues that claim 7 should be "subsumed" into claim 2.  (ECF

18  No. 28 at 6-7.)  For the following reasons, the undersigned finds that claim 7 is indistinguishable

19  from claim 2.

20       Claim 2 alleges that the prosecutor committed misconduct during closing argument with

21  his argument regarding the 1994 accident, for which petitioner had been convicted.  (ECF No. 19-

22  2 at 8-9.)  Petitioner argues that the prosecutor moved to introduce evidence of the 1994 accident

23  on the grounds that that it supported an inference of implied malice in the 2006 accident.  (Id.)

24  The prosecutor then argued to the jury that petitioner's "defense was involuntary intoxication,"

25  that the 1994 accident evidence was not submitted "to show some type of character in conformity

26  with this additional evidence," but "[p]eople act of conformity with character all of the time and if

27  you realistically look at the evidence in this case, [petitioner] is acting within character as,

28  unfortunately, some people do."  (Id.)  Petitioner argues that the prosecutor improperly went on to

1   argue that there are "4 dead bodies...he's killed before...it's time to accept responsibility...he got

2   away with it before...and he used the same excuse again." (Id.)  Petitioner argues that this

3   argument was improper because, as the prosecutor knew, petitioner had been convicted and

4   sentenced for the 1994 charges.  (Id.)

5          Claim 7 alleges that the prosecutor committed misconduct by urging the jury to consider

6   the 1994 accident for purposes other than that instructed by the trial court.  (Id. at 11.)  Petitioner

7   argues that the prosecutor introduced evidence of the 1994 accident to prove petitioner's

8   knowledge of the dangerousness of driving while sleepy.  (Id.)  The trial court instructed the jury

9   that this evidence could be considered for the purpose of showing whether or not petitioner knew

10  that driving while falling asleep was dangerous.  (Id.)  Petitioner argues that the prosecutor

11  committed misconduct when he argued that the 1994 accident was not introduced to show that

12  petitioner was acting in conformity with his character when he again killed 2 people in 2006, but

13  if the jury looked at the evidence it would see that petitioner was acting in conformity with his

14  character.  (Id.)

15         Claim 7 appears to be largely a restatement of some of the argument made in claim 2.

16  Because claim 2 is exhausted, not barred by the statute of limitations or procedurally defaulted,

17  neither is claim 7.  However, the undersigned recommends that petitioner be directed to file a

18  second amended petition clarifying that claim 7 is "subsumed" by claim 2, thereby deleting claim

19  7 altogether.

20  Statute of Limitations

21         Respondent argues that the claims stayed pursuant to Kelly, supra, i.e, claims 3, 5, 6 and

22  8, and raised in the amended petition filed January 23, 2014, are barred by the statute of

23  limitations.

24         28 U.S.C. § 2244(d)(1) contains the statute of limitations applicable to this action:

25              A 1-year period of limitation shall apply to an application for a writ
                of habeas corpus by a person in custody pursuant to the judgment of
26              a State court.  The limitation period shall run from the latest of –

27              (A) the date on which the judgment became final by the conclusion
                    of direct review of the expiration of the time for seeking such
28                  review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Respondent argues that the statute of limitations is calculated pursuant to the date on which petitioner's conviction became final. Petitioner does not dispute that this is the proper limitations period.

"Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files a petition. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the one-year limitations period begins to run on the date the ninety-day period defined by United State Supreme Court Rule 13 expires. See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final 90 days after the California Supreme Court denied review); Bowen, 188 F.3d at 1159 (same).

In the instant case, petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Therefore, the statute of limitations began running on November 30, 2010, i.e., ninety days after the California Supreme Court denied his petition for review on September 1, 2010. Petitioner had one year from November 30, 2010, to file a timely federal habeas petition, i.e., until November 30, 2011. The claims raised in the amended petition filed January 23, 2014, are not timely unless petitioner is entitled to statutory or equitable tolling.

*Statutory Tolling*

The statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A

1  properly filed application is one that complies with the applicable laws and rules governing

2  filings, including the form of the application and time limitations.  Artuz v. Bennett, 531 U.S. 4, 8

3  (2000).  An application is pending during the time that "a California petitioner completes a full

4  round of [state] collateral review," so long as there is no unreasonable delay in the intervals

5  between a lower court decision and the filing of a petition in a higher court.  Delhomme v.

6  Ramirez, 340 F.3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by

7  Waldrip v. Hall, 548 F.3d 729 (9th Cir. 2008) (per curium) (internal quotation marks and citations

8  omitted); see Evans v. Chavis, 546 U.S. 189, 193–94 (2006); see Carey v. Saffold, 536 U.S. 214,

9  220, 222–26 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

10        Respondent argues that the statute of limitations was tolled from November 23, 2010, i.e.,

11  when petitioner filed his first state habeas petition in the Superior Court, until March 24, 2011,

12  i.e., when the California Court of Appeal denied his petition without prejudice to petitioner

13  raising ground two in a petition filed in the Superior Court.  Respondent argues that the tolling

14  period again commenced when petitioner filed his second petition in the Superior Court on April

15  29, 2011, and ended on June 20, 2011, when the Superior Court denied the petition.

16        The undersigned agrees with respondent's reasoning set forth above.  Petitioner's second

17  petition filed in the Superior Court, raising a new claim, constituted a separate "round" of habeas

18  petitions.  There is no statutory tolling for the period between sets or "rounds" of state habeas

19  petitions.  Biggs v. Duncan, 339 F.3d 1045 (9th Cir. 2003) (no tolling once California Supreme

20  Court denied review); see also Smith v. Duncan, 297 F.3d 809 (9th Cir. 2002), abrogation on

21  other grounds recognized by Moreno v. Harrison, 245 Fed.Appx. 606 (9th Cir. 2007) (no tolling

22  during gap between first set of state petitions and second).  In Delhomme v. Ramirez, 340 F.3d

23  817, 820 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F.3d

24  729 (9th Cir. 2008) (per curiam), the Ninth Circuit held that a petitioner begins a separate round

25  of review "each time [he] files a new habeas petition at the same or a lower level" of the state

26  court system.  See also Nino, 183 F.3d at 1006–07 (intervals tolled between state court's

27  disposition of a state habeas petition and the filing of "a petition at the next state appellate

28  level.").

1    Petitioner's first two rounds of state habeas petitions, discussed above, tolled the statute of

2    limitations for 175 days, extending the limitations date to May 23 2012.

3    The undersigned next considers whether petitioner is entitled to statutory tolling for his

4    next round of state habeas petitions, i.e., his third round, which began when he filed his third

5    habeas petition in the Superior Court on January 11, 2012.

6    The undersigned first finds that petitioner is not entitled to interval tolling for the time

7    between his second and third round of state habeas petitions, i.e, from June 20, 2011, to January

8    11, 2012, because his third round of state habeas petitions raised claims unrelated to those raised

9    in his first and second round of state habeas petitions.  See Biggs v. Duncan, supra; Delhomme v.

10   Ramirez, supra; Smith v. Duncan, supra.

11   Respondent argues that petitioner's third habeas petition filed in the Superior Court on

12   January 11, 2012, and denied on March 6, 2012, did not toll the limitations period because the

13   Superior Court denied the petition as successive and untimely.  The statute of limitations is tolled

14   during the period in which a "properly filed" application for post-relief is pending.  See 28 U.S.C.

15   § 2244(d)(2).  However, a petition is not considered "properly filed" when a state court denies the

16   petition as untimely or untimely.  See Porter v. Ollison, 620 F.3d 952, 958 (9th Cir. 2010).

17   As noted above, on August 8, 2012, the California Court of Appeal issued an order

18   directing the Superior Court to vacate the March 6, 2012 order and reassign petitioner's petition

19   to a different judge. (ECF No. 27 at 30.)  The California Court of Appeal found that the Superior

20   Court judge who considered petitioner's petition filed January 11, 2012, was disqualified from

21   considering the petition.  (Id. at 29.)  Because the California Court of Appeal vacated the Superior

22   Court's March 6, 2012 order because the judge who considered the petition was disqualified, the

23   petition was not "improperly" filed.

24   Although the Superior Court's March 6, 2012 order was vacated, petitioner was

25   attempting to exhaust his state court remedies when he filed his habeas petition in the Superior

26   Court on January 11, 2012.  Accordingly, petitioner is entitled to statutory tolling from the time

27   he filed that petition until the Court of Appeal vacated the Superior Court's order on August 8,

28   2012, i.e., for 210 days.

14

As noted above, on October 11, 2012, the Superior Court again denied the petition as untimely and/or successive.  The California Court of Appeal then found claims 3, 5, 6 and 8 (designated as claims E, C(1), C(2), F and H, respectively) to be untimely and successive.  While the California Supreme Court next denied the petition for review without comment or citation, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Under Ylst, it may be presumed that the California Supreme Court denied claims 3, 5, 6 and 8 for the same reasons as the California Court of Appeal.

In Pace v. DiGuglielmo, 544 U.S. 408, 414, (2005), the U.S. Supreme Court held that "when a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  Here, the Superior Court, California Court of Appeal and Supreme Court denied petitioner's claims 3, 5, 6 and 8 as untimely and/or successive, and those determinations bind the undersigned.  Therefore, petitioner is not entitled to statutory tolling for those state habeas petitions.

Petitioner is entitled to statutory tolling of 210 days for his third round of state habeas petitions.  Adding 210 days to May 12, 2012, brings the limitations period to December 8, 2012.  With statutory tolling, the at-issue claims are not timely.[2]

*Equitable Tolling*

Petitioner makes no argument in support of equitable tolling.  Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (the petitioner bears the burden of showing that equitable tolling is appropriate).

*Conclusion*

For the reasons discussed above, the undersigned finds that claims 3, 5, 6 and 8 are not timely.

---

[2]  With regard to petitioner's federal habeas petition, the undersigned observes that the filing of a federal habeas petition does not toll the statute of limitations.  Duncan v. Walker, 533 U.S. 167, 172-75 (2001).

15

Relation Back

The March 13, 2012 findings and recommendations addressing petitioner's motion to stay noted that in step three of the <u>Kelly</u> procedure, a petitioner is allowed to add his newly exhausted claims back into the federal petition if the claims are independently timely under the statute of limitations or "relate back" to the exhausted claims in the pending petition.  (ECF No. 17 at 9-10.) Neither party has addressed whether claims 3, 5, 6, or 8 relate back to the previously exhausted claims.  However, the undersigned herein finds claims 3, 5, 6 and 8 to be procedurally barred. For this reason, the undersigned need not consider whether these claims relate back to the previously exhausted claims.

Procedural Bar

*Legal Standard*

A federal court will not review questions of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal ground and is adequate to support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729–30 (1991).  In cases in which a state prisoner has defaulted his claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice.  <u>Id.</u> at 750

*Independent and Adequate Grounds for Procedural Bar*

The undersigned first considers whether the procedural bars cited by the state courts constituted adequate and independent state procedural rules.

The California Court of Appeal found that claims 3, 5, 6, and 8 were procedurally barred. (ECF No. 19-5 at 1, petitioner's exhibit 3.)  The California Supreme Court denied petitioner's petition for review without comment or citation.  (ECF No. 19-3, petitioner's exhibit 1.)  Where, as here, the California Supreme Court denies a petitioner's claims without comment, the state high court's "silent" denial is considered to last on the last reasoned decision on these claims, in this case, the grounds articulated by the California Court of Appeal.  <u>See Ylst v. Nunnemaker</u>,

1   501 U.S. 797, 803-06 (1991).  Accordingly, the undersigned considers whether the procedural

2   grounds relied on by the California Court of Appeal were adequate and independent state

3   procedural rules.

4        The California Court of Appeal found that claims 3, 5, 6, and 8 were successive, citing In

5   re Clark, 5 Cal.4th 750 (1993).  In re Clark stands for the proposition that absent justification for a

6   failure to present all known claims in a single, timely habeas petition, a successive petition will be

7   denied.  Arroyo v. Curry, 2009 WL 723877, at *5 (N.D. Cal. Mar. 18, 2009).  Although the Ninth

8   Circuit has not ruled on whether California's bar on successive petitions constitutes a valid

9   grounds for procedural default of federal claims, several district courts, in well-reasoned

10  decisions have concluded that it does.  See, e.g., Rutledge v. Katavich, 2012 WL 2054975, at *7

11  (N.D. Cal. June 5, 2012) (California's procedural rule against successive petitions bars federal

12  habeas review); Arroyo, 2009 WL 723877, at *4-6.  This court adopts the reasoning of those

13  decisions and finds that In re Clark constitutes an independent and adequate state procedural

14  ground for the denial of claims 3, 5, 6 and 8.

15       The California Court of Appeal found that claims 3, 5, 6 and 8 were untimely, citing In re

16  Robbins, 18 Cal.4th 770, 77 (1998).  The Ninth Circuit has held that California's "substantial

17  delay" timeliness standard satisfies the "independent and adequate" requirement.  See Bennett v.

18  Mueller, 322 F.3d 573, 582–83 (2003); see also Walker v. Martin, 131 S. Ct. 1120, 1131 (2011)

19  (finding that California's timeliness standard is adequate).

20       The California Court of Appeal also found that claim 3 was barred pursuant to In re

21  Dixon, 41 Cal.2d 756, 759 (1953).  In re Dixon sets forth California's rule that "habeas corpus

22  cannot serve as a substitute for an appeal, and, in the absence of special circumstances

23  constituting [sic] an excuse for failure to employ that remedy, the writ will not lie where the

24  claimed errors could have been, but were not, raised upon a timely appeal from a judgment of

25  conviction."  41 Cal.2d at 759.  The Dixon rule satisfies the "independent and adequate"

26  requirement for procedural bars.  See Smith v. Crones, 2010 WL 1660240 at *1) (E.D. Cal. 2010)

27  ////

28  ////

17

1   (Chief Judge Kozinski concluding that <u>Dixon</u> rule is independent and adequate).[3]

2         For the reasons discussed above, the undersigned finds the state procedural rules cited by

3   the California Court of Appeal were adequate and independent.

4         *Cause and Prejudice*

5         In his opposition, petitioner argues that he satisfies the cause and prejudice exception to

6   the procedural default rule.  With respect to claims 5 and 6, alleging ineffective assistance of

7   counsel, petitioner argues that he did not raise these claims sooner due to failings by appellate

8   counsel.  (ECF No. 28 at 3.)  Petitioner argues that his appellate counsel was ineffective for

9   failing to raise these claims on direct appeal.[4]  (<u>Id.</u> at 4.)

10        In California, as a general rule, claims of ineffective assistance of counsel are more suited

11  for habeas corpus than direct appeal as they involve consideration of matters outside the record.

12  <u>People v. Mendoza Tello</u>, 15 Cal.4th 264, 266-67 (1997); <u>see also</u> <u>Rodriguez v. Adams</u>, 545

13  Fed.Appx. 620, 622 (9th Cir. 2013) (quoting <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1921 (2013))

14  ("California's 'state procedural framework, by reason of its design and operation, makes it highly

15  unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of

16  ineffective assistance of trial counsel on direct appeal.")  Accordingly, the undersigned cannot

17  _____

18  [3] The California Court of Appeal also cited <u>In re Waltreus</u>, 62 Cal.2d 218 (1965).  A <u>Waltreus</u>
    citation does not affect the determination regarding procedural default.  <u>Ylst v. Nunnemaker</u>, 501

19  U.S. 797, 804 n. 3 (1991) (observing that with respect to California's <u>Waltreus</u> rule:  "Since a
    later state decision based upon ineligibility for further state review neither rests upon procedural

20  default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas
    is nil...").

21

22  [4]  In support of his argument for cause based on ineffective assistance of appellate counsel,
    petitioner cites <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012).  <u>Martinez</u> is not applicable to this

23  argument for the following reasons.  In <u>Martinez</u>, the Supreme Court held that the ineffective
    assistance of *post-conviction* counsel, i.e., not appellate counsel, "at *initial-review collateral*

24  *review proceedings*"—while not stating a constitutional claim itself—may establish cause to
    excuse procedural default of claims of ineffective assistance of trial counsel when a post-

25  conviction proceeding represents the first opportunity under state law for a petitioner to litigate
    such claims.  <u>Id.</u> at 1315.  (italics added).  <u>Martinez</u> is not applicable to petitioner's instant

26  argument for cause because he does not claim that post-conviction counsel was ineffective for
    failing to raise these claims at an initial review proceeding.  Moreover, petitioner's default of

27  these claims did not occur during initial-review collateral review proceedings.  The default
    occurred during petitioner's third round of state habeas.

28

1    find that appellate counsel was ineffective for failing to raise claims 5 and 6 on direct appeal.

2           Moreover, an allegation of ineffective assistance of appellate counsel as cause for

3    procedural default "is itself an independent constitutional claim" and is subject to the same

4    exhaustion requirement as other habeas claims.  See Edwards v. Carpenter, 529 U.S. 446, 451–54

5    (2000).  It does not appear from the record that petitioner has exhausted any claim alleging that

6    appellate counsel was ineffective for failing to raise these ineffective assistance of counsel

7    claims.[5]

8           For the reasons discussed above, the undersigned that petitioner has not demonstrated

9    cause with respect to his default of claims 5 and 6.

10          With respect to claim 3, petitioner argues that the trial court improperly excluded evidence

11   that he had, in fact, been convicted of crimes and punished for the 1994 accident.  Petitioner

12   argues that his default of claim 3 should be excused due to ineffective assistance of appellate

13   counsel.  While the factual basis of claim 3 was alleged in state court on direct appeal, the federal

14   constitutional basis was not asserted.  Petitioner argues that his appellate counsel was ineffective

15   for failing to argue that the trial court violated his federal constitutional rights in connection with

16   claim 3.

17          The undersigned cannot locate any record demonstrating that petitioner exhausted a claim

18   alleging that appellate counsel was ineffective for failing to allege a violation of petitioner's

19   federal constitutional rights in connection with claim 3.  Accordingly, petitioner has not

20   demonstrated cause for his default of claim 3.  See Edwards v. Carpenter, supra.

21          Claim 8 alleges cumulative error.  Petitioner argues that his default of this claim is

22   excused due to ineffective assistance of appellate counsel.  The undersigned cannot locate any

23   record demonstrating that petitioner exhausted a claim alleging that appellate counsel was

24   ineffective for failing to raise a claim alleging cumulative error.  See Edwards v. Carpenter, supra.

25          Because the undersigned finds that petitioner has not demonstrated cause with respect to

26   his defaulted claims, there is no need to consider the prejudice element.

27   _____

28   [5]  Petitioner's petition for review filed in the California Supreme Court does not raise an
     ineffective assistance of appellate counsel claim.

1    *Fundamental Miscarriage of Justice*

2         As noted above, a habeas petitioner "may also qualify for relief from his procedural

3    default if he can show that the procedural default would result in a 'fundamental miscarriage of

4    justice.'" Cook v. Schriro, 538 F .3d 1000, 1028 (9th Cir. 2008) (citing Schlup v. Delo, 513 U.S.

5    298, 321 (1995)).  This exception to the procedural default rule is limited to habeas petitioners

6    who can establish that "a constitutional violation has probably resulted in the conviction of one

7    who is actually innocent[.]"  Schlup, 513 U.S. at 327.  See also Murray v. Carrier, 477 U.S. 478,

8    496 (1986); Cook, 538 F.3d at 1028.  "'To be credible, such a claim requires petitioner to support

9    his allegations of constitutional error with new reliable evidence—whether it be exculpatory

10   scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not

11   presented at trial.'"  Cook, 538 F.3d at 1028 (quoting Schlup, 513 U.S. at 324).

12        For the following reasons, the undersigned finds that the record does not support the

13   miscarriage of justice exception.  Claims 3, 5 and 6 all concern the admission of evidence

14   regarding the 1994 incident and the trial court's exclusion of evidence regarding petitioner's

15   conviction for crimes related to this incident.  These claims are not based on new reliable

16   evidence demonstrating petitioner's actual innocence.  The undersigned further finds that claim 8,

17   alleging cumulative error, also does not meet the miscarriage of justice exception as it is not

18   based on claims alleging actual innocence.

19   Exhaustion

20        Respondent argues that claims 3, 5, 6, and 8 are not exhausted because in the petition for

21   review filed in the California Supreme Court, petitioner only challenged the procedural default

22   imposed by the California Court of Appeal.   Respondent argues that petitioner did not address

23   the merits of claims 3, 5, 6 and 8 in the petition for review filed in the California Supreme Court.

24        Under 28 U.S.C. § 2254(b), habeas relief may not be granted unless the petitioner has

25   exhausted the remedies available in the courts of the state.  Exhaustion requires that the

26   petitioner's contentions be fairly presented to the state courts and be disposed of on the merits by

27   the highest court of the state.  See James v. Borg, 24 F.3d 20, 24 (9th Cir. 1994).  As a general

28   rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the

1   appropriate state courts in the manner required by the state courts.  Casey v. Moore, 386 F.3d at

2   915–16 (9th Cir. 2004).

3         If federal habeas claims were not fairly presented to the state courts, but an independent

4   and adequate state procedural rule exists which bars their review in federal court, then a habeas

5   petitioner who has defaulted his federal claims in state court meets the technical requirement for

6   exhaustion.  Casey, 386 F.3d at 920 ("Because at the time Casey filed for habeas relief in the

7   federal district court no further state remedies were available to him, his claims are exhausted.")

8   (citing Coleman, 501 U.S. at 732).

9         In the instant case, petitioner meets the technical requirement for exhaustion because

10  claims 3, 5, 6 and 8 are procedurally barred.  No further remedies are available to petitioner

11  because these claims were found to be untimely and successive.  Accordingly, respondent's

12  motion to dismiss these claims as unexhausted is without merit.

13  Conclusion

14        The undersigned recommends that respondent's motion to dismiss claims 3, 5, 6 and 8 be

15  granted on grounds that they are barred by the statute of limitations and procedurally defaulted.

16  Respondent's motion to dismiss claim 7 should be denied on grounds that it is "subsumed" by

17  claim 2.  The undersigned recommends that following the adoption of these findings and

18  recommendations, petitioner be ordered to file a second amended petition containing claims 1, 2

19  and 4 only.  As discussed above, petitioner should omit claim 7 as it is "subsumed" by claim 2.

20  Because preliminary procedural matters have been resolved, the second amended petition need

21  only contain a discussion of the merits of petitioner's claims.

22        Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss

23  (ECF No. 27) be granted as to claims 3, 5, 6, and 8 on grounds that they are barred by the statute

24  of limitations and procedurally barred; respondent's motion to dismiss claim 7 be denied without

25  prejudice; following adoption of these findings and recommendations, petitioner be ordered to file

26  a second amended petition raising claims 1, 2 and 4 only.

27        These findings and recommendations are submitted to the United States District Judge

28  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

4  he shall also address whether a certificate of appealability should issue and, if so, why and as to

5  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

6  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

7  2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

8  service of the objections.  The parties are advised that failure to file objections within the

9  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

10  F.2d 1153 (9th Cir. 1991).

11  Dated:  August 26, 2014

12

13  Buc3147.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

22